UNITED STATES v. U. S. INDUSTRIAL ALCOHOL CO. et al.

No. 5297.

District Court, D. Maryland.

Sept. 1, 1934.

Bernard J. Flynn, U. S. Atty., of Baltimore, Md., James M. Hoffa, of Baltimore, Md., and George W. Whiteside, Abraham Benedict, and Samuel Klaus, all of New York City.

Edwin G. Baetjer (of Venable, Baetjer & Howard), of Baltimore, Md., Thomas D. Thacher and Sanford H. E. Freund, both of New York City, for defendants.

CHESNUT, District Judge.

In this suit at law the Government of the United States sues to recover from the defendants internal revenue taxes in the amount of $8,140,514.88, alleged to be due under the Revenue Act of 1926, § 900 (44 Stat. 104, USCA title 26, § 245), effective February 26, 1926. Subdivision (3) provides a tax on distilled spirits in bond at the rate of $1.10 per gallon. Subdivision (4) reads as follows:

"(4) On and after February 26, 1926, on all distilled spirits which are *diverted to beverage purposes* or for use in the manufacture or production of any article used or intended for use as a beverage there shall be levied and collected a tax of $6.40 on each proof gallon or wine gallon * * * to be paid by the person responsible for such diversion. If a tax at the rate of * * $1.10 per proof or wine gallon has been paid upon such distilled spirits a credit of the tax so paid shall be allowed in computing the tax imposed by this paragraph."

It is further provided by section 481 of title 26 that denatured alcohol, for use in the arts and industries, may be withdrawn from bond free of tax, under conditions prescribed by the Commissioner of Internal Revenue, with approval of the Secretary of the Treasury. A similar provision was contained in the National Prohibition Act (section 10, title 3); USC, title 27, § 80 (27 USCA § 80).

The declaration alleges in substance that the defendants, the United States Industrial Alcohol Company, a West Virginia corporation, and its wholly owned subsidiary, the United States Industrial Chemical Co., a Maryland corporation, had industrial alcohol plants and bonded warehouses at Baltimore, Maryland, and were engaged in the business of manufacturing and selling industrial alcohol, and in the course thereof withdrew from bond large amounts of distilled spirits from their bonded warehouses under the false and fraudulent representations that they were to be used for industrial purposes only, but really with the design and intent that after said distilled spirits had been denatured and manufactured into a product called "lacquer thinner," the latter was to be chemically treated and the alcohol was to be recovered and used for beverage purposes; and that the latter purpose was carried out under circumstances which, it is alleged, made the defendants responsible for the diversion of the distilled spirits, so withdrawn from bond, to beverage purposes. The time was 1929–1930.

The defendants have demurred to the declaration for the specific reason only, "that said alleged taxes for the recovery of which this suit is brought are in reality penalties to enforce the Eighteenth Amendment to the Constitution of the United States, and laws enacted pursuant thereto; and that by ratification of the Twenty-First Amendment of the United States, said Eighteenth Amendment and all laws passed pursuant thereto became inoperative and no recovery can be made thereunder." The repeal of National Prohi-

bition became effective December 5, 1933, and this suit was not instituted until January 13, 1934.

The contention of the defendants is that the Twenty-First Amendment in legal effect accomplished a repeal of that portion of the Revenue Act of 1926 which imposed the $6.40 tax per gallon on distilled spirits. The contention is based on the supposed effect of United States v. Chambers, 291 U. S. 217, 54 S. Ct. 434, 435, 78 L. Ed. 763, 89 A. L. R. 1510. That well-known case held that a criminal prosecution for violation of the National Prohibition ·Act still pending on December 5, 1933, was necessarily abated by the withdrawal of the constitutional authority for national prohibition. While the particular case was a criminal prosecution, it is the defendants' contention that the principle is likewise applicable to and effects the abatement of the claim in this case for taxes on distilled spirits which, it is said, constitute in reality a *penalty*, imposed by Congress to enforce, national prohibition. The argument is that, although denominated a tax in the statute, the imposition was in substantial reality a penalty on the manufacture and sale of distilled spirits for beverage purposes which, of course, was unlawful during the existence of National Prohibition.

The principle of the decision in the Chambers Case was that, as the *power* of Congress to enact the National Prohibition Act was derived from the Eighteenth Amendment, the power ceased when the amendment was repealed by the Twenty-First Amendment, which contained no saving clause as to pending cases of former violations of the National Prohibition Act. The court referred to Yeaton v. United States, 5 Cranch, 281, 283, 3 L. Ed. 101, where Chief Justice Marshall said that "it has been long settled, on general principles, that after the expiration or repeal of a law, no penalty can be enforced, nor punishment inflicted, for violations of the law committed while it was in force, unless some special provision be made for that purpose by statute." Reference was also made to Chief Justice Taney's expression in State of Maryland v. B. & O. R. Co., 3 How. 534, 552, 11 L. Ed. 714, that "the repeal of the law imposing the penalty, is of itself a remission." The Government contended the provision of 1 USC, § 29 (1 USCA § 29) saved the case. It reads as follows:

"The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability."

But the Supreme Court overruled the contention saying:

"But this provision applies, and could only apply, to the repeal of statutes by the Congress and to the exercise by the Congress of its undoubted authority to qualify its repeal and thus to keep in force its own enactments. * * * The Congress, however, is powerless to expand or extend its constitutional authority. * * * The National Prohibition Act was not repealed by act of Congress but was rendered inoperative, so far as authority to enact its provisions was derived from the Eighteenth Amendment, by the repeal, not by the Congress but by the people, of that amendment. * * * We are of the opinion that in such a case the statutory provision relating to the repeal of statutes by the Congress has no application."

The important question in the present case is whether the Twenty-First Amendment repealed the Act of Congress imposing the $6.-40 rate per gallon. Of course, in terms there was no repeal. Defendants' contention, however, is that the repeal necessarily resulted in legal effect because the $6.40 rate although called a tax by Congress was essentially a penalty to enforce the policy of National Prohibition under the Eighteenth Amendment. Speaking of this rate (as it appeared in the 1921 Act) the Supreme Court by Mr. Justice Brandeis, in United States v. One Ford Coupé, 272 U. S. 321, at page 327, 47 S. Ct. 154, 156, 71 L. Ed. 279, 47 A. L. R. 1025, said:

"Furthermore, the Revenue Act of 1921 (Act Nov. 23, 1921, c. 136, § 600, 42 Stat. 227, 285 [26 USCA § 245 note]), enacted on the same day, shows that Congress had no intention then of relieving liquor from taxation merely because illegally dealt with. For it provided specifically that if distilled spirits, tax-paid for nonbeverage purposes, be diverted to beverage purposes, an additional tax of $4.20 per gallon must be paid, although under the law such diversion could not be made legally. * * * These supervening obstacles to paying the tax do not, however, establish that the intention was not to continue it in force. A law which imposes a tax on intoxicating liquor, whether legally or illegally made, is not in conflict with another law which prohibits the making of any such liquor. Compare United States v. Stafoff, 260 U. S. 477, 43 S. Ct. 197, 67 L. Ed. 358; Vigliotti v. Pennsylvania, 258 U. S. 403, 42 S. Ct. 330, 66 L. Ed. 686. There is no direct con-

flict between any provision of the prohibitory legislation and the imposition of the tax here in question."

And, on page 328 of 272 U. S., 47 S. Ct. 154, 157, it was further said:

"With respect to the character of the impositions called taxes there is nothing in either the Revenue Acts or the Prohibition Act which makes any distinction between the product of legal and illegal distillation. The acts left in effect the basic tax of $2.20 per gallon, which was and is a true tax on the product, whether legally or illegally distilled, and added to it the additional amounts in case of illegal distillation or diversion to illegal uses. These additional amounts also are called taxes by Congress, and were understood by it to be such. Whether they were intrinsically penalties and should be treated as such we need not determine."

In this connection reference must also be made to the Liquor Taxing Act of 1934 (Act of January 11, 1934, chapter 1, 48 Stat. 313) which, in title 1, § 2 (26 USCA § 245), provided as follows:

"Sec. 2. Paragraphs (3) and (4) of subdivision (a) of section 600 of the Revenue Act of 1918, as amended (relating to the tax on distilled spirits generally and the tax on distilled spirits diverted for beverage purposes) (U. S. C., Sup. VI, title 26, sec. 1150 (a) (1) and (2), are amended to read as follows:

"(3) On and after January 1, 1928, and until the effective date of Title I of the Liquor Taxing Act of 1934 [January 12, 1934], $1.10 on each proof gallon or wine gallon when below proof and a proportionate tax at a like rate on all fractional parts of such proof or wine gallon; and

"(4) On and after the effective date of Title I of the Liquor Taxing Act of 1934 [January 12, 1934], $2.00 on each proof gallon or wine gallon when below proof and a proportionate tax at a like rate on all fractional parts of such proof or wine gallon."

Section 600 of the Revenue Act of 1918 as amended (just referred to) with its amendments, was codified as section 245 of title 26, USC (26 USCA § 245) above quoted.

As the Liquor Taxing Act of 1934 amended the former Act which imposed the $6.40 tax, it seems clear that in the opinion of Congress, to be derived from what it did, the $6.-40 tax was not itself repealed or made ineffective by the Twenty-First Amendment.

I do not understand that it is contended by the defendants that the $6.40 rate is uncollectible by virtue of the amendment of the 1926 Act by the Liquor Taxing Act of 1934.

United States Code, title 1, § 29, 1 USCA § 29 (above quoted), seems conclusively to the contrary. Reference should also be made to section 5 of the Willis-Campbell Act, chapter 134, 42 Stat. 222, 223, USC, title 27, § 3 (27 USCA § 3) which provides:

"That all laws in regard to the manufacture and taxation of and traffic in intoxicating liquor, and all penalties for violations of such laws that were in force when the National Prohibition Act was enacted [October 28, 1919], shall be and continue in force, as to both beverage and nonbeverage liquor, except such provisions of such laws as are directly in conflict with any provision of the National Prohibition Act or of this Act; but if any act is a violation of any of such laws and also of the National Prohibition Act or of this Act, a conviction for such act or offense under one shall be a bar to prosecution therefor under the other."

And section 35 of the National Prohibition Act, title 2 (USC, title 27, § 52 [27 USCA § 52]), provided:

"This chapter shall not relieve anyone from paying any taxes or other charges imposed upon the manufacture or traffic in such liquor. No liquor revenue stamps or tax receipts for any illegal manufacture or sale shall be issued in advance, but upon evidence of such illegal manufacture or sale a tax shall be assessed against, and collected from, the person responsible for such illegal manufacture or sale in double the amount now provided by law, with an additional penalty of $500 on retail dealers and $1,000 on manufacturers. The payment of such tax or penalty shall give no right to engage in the manufacture or sale of such liquor, or relieve anyone from criminal liability, nor shall this chapter relieve any person from any liability, civil or criminal, heretofore or hereafter incurred under existing laws."

It seems entirely clear from these statutes and statements by the Supreme Court in the above cited cases, that it was the intention and understanding of Congress in passing the Revenue Act of 1921 (and presumably also that of 1926 with which we are here concerned directly) to continue the imposition of the $6.40 per gallon rate upon beverage liquor despite the Eighteenth Amendment and the National Prohibition Act. The opinion in the One Ford Coupé Case (especially the reference to prior Acts of Congress in Note 3 on page 326), shows that the Court had before it at that time a review of the important prior legislation dealing with the subject of taxation of liquors. It would unduly extend this

opinion to review in detail the several Acts of Congress upon the subject which resulted in the Act of 1926, with which we are here concerned. The legislative history, including the reports of committees of the House and Senate with respect to the several Acts and the important discussion with regard thereto in Congress, all of which are set out at considerable length and in detail in the plaintiff's brief filed in this case, show very clearly that it was the intention of Congress to continue the $6.40 rate on beverage liquor despite national prohibition. It may be particularly noted that the genesis of the revenue law with which we are concerned, was in the War Revenue Law of 1917 (40 Stat. 308, § 300) which provided for a tax of $1.10 on all distilled spirits in bond, and if withdrawn for beverage purposes, then $2.10 per gallon. (These taxes were to be in addition to the $1.10 per gallon imposed under the Act of 1894 [28 Stat. 563, § 48]). It is to be noted here that the stepped-up rate on distilled spirits withdrawn for beverage purposes then first appeared, evidently as a purely revenue measure to meet the exigencies of the war. The 1918 Revenue Act merely increased the rates in making for the first time the rate on liquor for beverage purposes $6.40 per gallon. The Amendments of 1921 and 1926 followed the same general form of enactment although in 1926 provision was made for decreasing the tax rate on non-beverage liquor while retaining the same rate of $6.40 for liquor diverted to beverage purposes. It is apparent that the stepped-up rate increasing the tax on liquor for beverage purposes ante-dated the Eighteenth Amendment, and even war time prohibition. There would seem to be no constitutional objection to a different rate of taxation imposed by Congress on liquors of different classifications as for instance, beverage and non-beverage liquor.

It is thus seen that we are not concerned in any way with a question of uncertain construction of the Revenue Act, and there is no doubt that Congress intended the $6.40 rate to be payable despite national prohibition. And it is equally clear that the rate was not only called a tax by Congress but was meant by it to be a tax. The defendants' contention, therefore, is necessarily grounded on the proposition that despite the language used and the understanding of Congress that the language used was intended to express an intention to impose a tax, nevertheless by virtue of the intrinsic nature of the rate it can only be regarded as a *penalty,* and so regarded must fall because Congress had no *power* to impose a penalty on beverage liquor except by virtue of the authority given by the Eighteenth Amendment.

The question is thus seen to be whether the $6.40 rate imposed by Congress on liquor diverted to beverage purposes was imposed by Congress in the exercise of power given by the Eighteenth Amendment (now repealed by the Twenty-First Amendment) or in the exercise of the general taxing power contained in article 1, § 8, of the Constitution. That is to say, unless Congress had no power to impose the $6.40 rate on liquor diverted to beverage purposes by the Act of 1926, then the obligation to pay the rate imposed by the Act on those responsible for the diversion continues irrespective of the repeal of National Prohibition by the Twenty-First Amendment. There is, of course, nothing in the Amendment itself to imply the repeal of the taxing act. The philosophy of the Chambers Case relied on by the defendants is very clearly to the effect that the Twenty-First Amendment took away from all branches of the federal government power to enforce any legislation thereafter prohibiting the manufacture, transportation and sale of intoxicating liquor for beverage purposes (other than in relation to interstate commerce). Our government is, of course, one of delegated powers only. No such power had been given to Congress prior to the adoption of the Eighteenth Amendment. And when this was repealed the power over this subject necessarily terminated. But, of course, the power of taxation did not terminate. And there would seem to be no doubt now that Congress could validly tax distilled spirits withdrawn from bond for other than beverage purposes at one rate and for beverage purposes at another rate. The result is that we must conclude the Revenue Act was passed pursuant to the taxing power and not to the power of the Eighteenth Amendment and, therefore, the repeal of the Eighteenth Amendment did not result in a repeal of the $6.40 per gallon rate. The case is not like that of the Child Labor Tax Case in 259 U. S. 20, 42 S. Ct. 449, 66 L. Ed. 817, 21 A. L. R. 1432, where the court concluded that the tax imposed by Congress on child labor was not a tax but a penalty and therefore unconstitutional. There the court determined that Congress had sought to exert a power not given to it but reserved to the states, through the form of a tax. That is to say, Congress exercised a power given to it to accomplish a purpose for which power was not given to it. And this was apparent upon the face of the Act itself. But in this case, it cannot be said that there is any purpose manifested by the Revenue Act in

question to exercise an unauthorized power. On the contrary, the power existed at the time both under the power to tax and the power of the Eighteenth Amendment. And the repeal of the latter while withdrawing one power did not withdraw the other; and either was sufficient as a basis for the legislation. It is not disputed in this case that Congress may validly tax that which it also prohibits. As was said by the Supreme Court by Mr. Justice Holmes in Murphy v. United States, 272 U. S. 630, 632, 47 S. Ct. 218, 71 L. Ed. 446:

"A government may endeavor to prevent certain facts and yet provide that if they happen they shall yield as much revenue as they might have yielded if lawful." United States v. One Ford Coupé Automobile, 272 U. S. 321, 47 S. Ct. 154, 71 L. Ed. 279, 47 A. L. R. 1025.

The defendants urge that the $6.40 rate is intrinsically a penalty and not a tax, and that Congress cannot by merely calling something a tax which is intrinsically a penalty, change the essential nature of the imposition. This is admitted to be so. United States v. La Franca, 282 U. S. 568, 572, 51 S. Ct. 278, 75 L. Ed. 551; United States v. One Ford Coupé, 272 U. S. 321, 328, 47 S. Ct. 154, 71 L. Ed. 279, 47 A. L. R. 1025; Lipke v. Lederer, 259 U. S. 557, 561, 42 S. Ct. 549, 66 L. Ed. 1061; Regal Drug Co. v. Wardell, 260 U. S. 386, 43 S. Ct. 152, 67 L. Ed. 318. And it is said that these cases in effect hold that this very $6.40 rate constituted a penalty and not a tax. I have carefully examined the cases but I think the most that can be said in favor of the defendants' contention in this respect is that the question is left open. It is clear enough that the dissenting opinion of Mr. Justice Butler in United States v. One Ford Coupé, supra, does definitely describe the $6.40 rate as a penalty as distinguished from a tax. But it is equally clear from the majority opinion by Mr. Justice Brandeis that that question was not decided by the court because it was not found necessary to do so. And in none of the cases can it be said that the court had under consideration the kind of a case that we are here dealing with which was then not in existence and very obviously not in contemplation. Lipke v. Lederer and Regal Drug Co. v. Wardell, presented merely procedural questions involving due process of law in collecting taxes. Nor are we now concerned with the question, dealt with in Murphy v. United States, and United States v. La Franca, supra, as to whether a conviction in a criminal prosecution under the National Prohibition Act is a bar to subsequent collection of so-called taxes which in essence are penalties. See, also, United States v. Jun, 48 F. (2d) 593 (C. C. A. 10), and In re Various Items, 282 U. S. 577, 51 S. Ct. 282, 75 L. Ed. 553.

The question in this case is simply one of congressional power, and whether it existed at the time of the passage of the Revenue Act in question irrespective of the Eighteenth Amendment. The original imposition of the stepped-up rate for beverage alcohol was due to the need of greater revenue occasioned by the war. This rate was continued even after the Armistice and in contemplation of wartime prohibition which was expected to be temporary only, and was subsequently continued after the Eighteenth Amendment was passed for the different reason that it was the policy of Congress to continue the tax despite National Prohibition and, if you please, in aid thereof. But these changing reasons for the imposition of the rate did not affect the fundamental power of Congress to impose the rate.

Therefore in my opinion, whether the rate is regarded as a tax pure and simple or whether it is regarded in a certain sense as a penalty is not the controlling question. Undoubtedly even if it is a pure tax there is an element of penalty involved inherent in the reason for which the tax was imposed. But this is different from holding that the so-called tax is in legal effect a penalty which Congress had no power to impose except by virtue of the Eighteenth Amendment. Penalties in tax laws are not unknown. They exist in the Customs Laws, and in the Income Tax Laws, and both are based on the power of taxation. While the idea of penalty in one sense involves punishment for crime, that is not the only sense in which the term can be used with respect to legislation of this character. Here even if the so-called tax is in reality a penalty it was nevertheless within the power of Congress to impose both before the Eighteenth Amendment and after it, and therefore it did not fall with its repeal.

I have not failed to consider the authorities cited by the defendants in support of their contention. They are entitled undoubtedly to careful consideration and to due weight. Thus it is pointed out that on the eve of repeal of the Eighteenth Amendment an Administrative Committee gave careful consideration to proposed subsequent congressional legislation contingent upon repeal and this Committee apparently reported to Congress that in its opinion the $3.40 rate would fall upon repeal of the Eighteenth Amendment. Even more persuasive is the decision which has been called to my attention

of United States District Judge Jones of the Northern District of Ohio in a case similar to this brought by the Government against the Glidden Co., 8 F. Supp. 177. I have given careful consideration to this persuasive authority but regret that I have not been able to reach the same conclusion.[1]

I therefore conclude that the demurrer to the declaration based on the single point herein discussed, must be overruled; but as other

[1] The question there arose on the demurrer of the Government to pleas in defense filed by the defendants. One of the pleas presented the question here involved. In overruling the demurrer the District Judge said: "Considering the challenge to the first named of these defenses, it seems to me to be against reason to believe that the levy to be collected under the revenue law in question was intended to be imposed for diversion of distilled spirits for beverage purposes, except upon the theory that it was unlawful to do so. If this could not have been asserted with complete accuracy on February 24th, 1919, it can be adequately supported by the subsequent amendments to the Internal Revenue laws of 1921 and 1926.

"While the precise question under the Revenue Act involved has not been before the higher courts, the history of the Act and its amendments, and the contemporaneous development of legislation under the Eighteenth Amendment, leaves free from doubt the penal character of the levy. No tax was to be paid for the distilled spirits withdrawn, under the facts in this case, unless they were diverted to beverage purposes, in which event the unit levy of $6.40 was to be imposed upon whomever should be found responsible for such diversion. * * * Regarding the levy provided for by the internal revenue law in question as a penalty and not a tax, my judgment is that repeal of the Eighteenth Amendment affects a complete bar to its recovery, and this for the reason that I think the section of the Revenue Act in question, insofar as it provides a penalty for diversion of distilled spirits, was an adjunct and a supplement to the prohibition laws which passed with the repeal of its base."

On the other hand counsel for the Government in this case have called to my attention some other cases apparently involving a similar question in which a different view has been taken of the effect of the repeal of the Eighteenth Amendment. The cases referred to were suits on bonds given by owners of industrial alcohol plants, the claims being in whole or in part for taxes alleged to be due by reason of diversion to beverage purposes. In United States v. Philip H. Warshaw, Inc., and Royal Indemnity Co., and Same v. Ramco Remedy and Medical Co. and Eagle Indemnity Co., and Same v. Flora Medical Corporation and Eagle Indemnity Co., 8 F. Supp. 95, in the United States District Court for the Eastern District of New York, motions by the defendant to dismiss the complaints on the ground that the Twenty-First Amendment to the Constitution of the United States deprived the court of power or jurisdiction to proceed further in the cases, were denied by District Judge Moscowitz who said, after referring to congressional legislation relating to industrial alcohol:

"The history of this legislation clearly shows that Congress did not undertake to prohibit the industrial use of alcohol after the adoption of the 18th Amendment. Neither the 18th Amendment nor any of its enacting statutes show any intent on the part of Congress to prohibit the use of alcohol in the manufacturing arts.

"The case of United States v. Chambers and Gibson [291 U. S. 217, 54 S. Ct. 434] 78 L. Ed. [763] 526 [89 A. L. R. 1510] in no way affects the Government's power to regulate and control industrial alcohol. * * * I am advised that on April 20th, 1934, Judge Caffey, in the United States District Court, Southern District of New York, in the matter of United States v. Joseph A. Allen, Northwestern Casualty & Surety Company and Massachusetts Bonding & Insurance Company, No. L 44-402, denied a similar motion without opinion."

The case of United States v. Quaker Industrial Alcohol Corporation et al., in the District Court for the Eastern District of Pennsylvania, 2 F. Supp. 863, presented a similar claim. The Government there recovered a verdict for $85,400 with interest from October 10, 1928, and the defendant moved for a new trial which was overruled in written opinion by District Judge Kirkpatrick on October 17, 1932; and the ensuing judgment was affirmed by the Circuit Court of Appeals for the Third Circuit under the title of New Amsterdam Casualty Co. v. United States, 67 F.(2d) 488, on October 23, 1933. All of this was, of course, prior to the adoption of the Twenty-First Amendment. I am informed by counsel for the Government that subsequent proceedings in that case were as follows: On December 14, 1933, a petition for certiorari was filed in the Supreme Court which, however, did not make the contention which is now made in this case with regard to the effect of the Twenty-First Amendment. The writ was denied January 22, 1934, 291 U. S. 662, 54 S. Ct.

defenses are indicated and as the question is both important and novel, I will overrule the demurrer without prejudice to the defendants' renewal of their contention if appropriately raised at later stages of the proceedings; so that if desired, renewed consideration may be given to the subject if there are further developments in the way of judicial opinions or other new matters which merit further consideration.

The demurrer to the declaration is, therefore, overruled and the defendants are given fifteen days to plead to the declaration.

438, 78 L. Ed. ——. Thereafter the defendant filed a petition for re-hearing in the Supreme Court which, for the first time in the case, made the contention that the Twenty-First Amendment precluded recovery in the case, making special reference to the recently decided case of Chambers and Gibson. On March 5, 1934, re-hearing was denied by the Supreme Court, 291 U. S. 650, 54 S. Ct. 526, 78 L. Ed. ——, and thereafter on March 9, 1934, defendants filed a petition in the Circuit Court of Appeals for the 3rd Circuit to recall and modify mandate of that court to give full effect and purpose to the Twenty-First Amendment to the Constitution of the United States. Hearing was granted and argument heard March 19, 1934, briefs were also filed on both sides. May 28, 1934, motion to recall and modify mandate was denied without opinion. See, also, Benton v. United States, 70 F.(2d) 24, 27 (C. C. A. 4).