UNITED STATES v. UNITED STATES INDUSTRIAL ALCOHOL CO. et al.

No. 5297.

District Court, D. Maryland.

July 27, 1936.

Bernard J. Flynn, U. S. Atty., of Baltimore, Md. (Geo. W. Whiteside and Abraham Benedict, both of New York City, and James M. Hoffa, of Baltimore, Md., of counsel), for the United States.

Venable, Baetjer & Howard, of Baltimore, Md. (Edwin G. Baetjer, of Baltimore, Md., and Thos. D. Thacher and Sanford H. E. Freund, both of New York City, of counsel), for defendants.

CHESNUT, District Judge.

This case is again before the court on the pleadings. On the prior occasion the defendants' demurrer to the plaintiff's declaration was overruled. (D.C.) 8 F.Supp. 179. In due course the defendants have separately filed their pleas. As to these issue has been joined on the first and second, replications have been filed to the fourth and sixth and the plaintiff has demurred to the third and fifth. The question presented is whether the demurrers should be sustained or overruled.

By the declaration in this case the Government brings a civil suit at law to recover from the defendants internal revenue taxes in the amount of $8,140,514.88, alleged to be due under the Revenue Act of 1926, § 900, (44 Stat. 104, 26 U.S.C.A. § 245 [see 26 U.S.C.A. § 1150 note]), effective February 26, 1926. The statute is set out in the margin.[1]

For a clearer understanding of the questions now presented, reference should also be made to section 481 of title 26 of the 1925 Code (26 U.S.C.A. § 1320 (a), providing that denatured alcohol for use in the arts and industries may be withdrawn from bond, free of tax, under the conditions prescribed by the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury. A similar provision was contained in the National Prohibition Act (section 10, title 3) U.S.C.A. title 27, § 80.

In the opinion reported in 8 F.Supp. 179, the contents of the plaintiff's lengthy declaration were summarized as follows: "The declaration alleges in substance that the defendants, the United States Industrial Alcohol Company, a West Virginia corporation, and its wholly owned subsidiary, the

---

[1] "§ 245. Tax on distilled spirits. There shall be levied and collected on all distilled spirits now in bond or that have been or that may be hereafter produced in or imported into the United States, in lieu of the internal-revenue taxes now imposed thereon by law, an internal-revenue tax at the following rates, to be paid by the distiller or importer when withdrawn, and collected under the provisions of existing law.

"(1) Until January 1, 1927, $2.20 on each proof gallon or wine gallon when below proof and a proportionate tax at a like rate on all fractional parts of such proof or wine gallon;

"(2) On and after January 1, 1927, and until January 1, 1928, $1.65 on each proof gallon or wine gallon when below proof and a proportionate tax at a like rate on all fractional parts of such proof or wine gallon; and

"(3) On and after January 1, 1928, $1.10 on each proof gallon or wine gallon when below proof and a proportionate tax at a like rate on all fractional parts of such proof or wine gallon.

"(4) On and after February 26, 1926, on all distilled spirits which are diverted to beverage purposes or for use in the manufacture or production of any article used or intended for use as a beverage there shall be levied and collected a tax of $6.40 on each proof gallon or wine gallon when below proof, and a proportionate tax at a like rate on all fractional parts of such proof or wine gallon, to be paid by the person responsible for such diversion. If a tax at the rate of $2.20, $1.65, or $1.10 per proof or wine gallon has been paid upon such distilled spirits a credit of the tax so paid shall be allowed in computing the tax by this paragraph."

United States Industrial Chemical Co., a Maryland corporation, had industrial alcohol plants and bonded warehouses at Baltimore, Maryland, and were engaged in the business of manufacturing and selling industrial alcohol, and in the course thereof withdrew from bond large amounts of distilled spirits from their bonded warehouses under the false and fraudulent representations that they were to be used for industrial purposes only, but really with the design and intent that after said distilled spirits had been denatured and manufactured into a product called 'lacquer thinner,' the latter was to be chemically treated and the alcohol was to be recovered and used for beverage purposes; and that the latter purpose was carried out under circumstances which, it is alleged, made the defendants responsible for the diversion of the distilled spirits, so withdrawn from bond, to beverage purposes. The time was 1929-1930."

To this declaration the defendants demurred for the specific reason only "that said alleged taxes for the recovery of which this suit is brought are in reality penalties to enforce the Eighteenth Amendment to the Constitution of the United States, laws enacted pursuant thereto, and that by ratification of the Twenty-first Amendment of the United States said Eighteenth Amendment and all laws passed pursuant thereto became inoperative and no recovery can be made thereunder." After somewhat extended consideration of the subject matter, including a review of the history of the legislation resulting in the Revenue Act of 1926, § 900, and applicable decisions of the Supreme Court, it was concluded that the power of Congress to enact the revenue statute referred to did not depend on the constitutional authority conferred by the Eighteenth Amendment and therefore the statute did not fall with the enactment of the Twenty-first Amendment repealing the Eighteenth Amendment. The demurrer was therefore overruled. In view of the novelty and difficulty of the question presented it was stated in the opinion that the demurrer was overruled without prejudice to the defendants' renewal of their contention if appropriately raised at later stages of the proceedings. On the familiar rule

of Maryland pleading that a demurrer at any stage of the case mounts to the first error in pleading, the defendants now renew their contention that the declaration was insufficient for. the reason stated, but the question has not been again argued. Counsel for the defendants say that it was made merely to preserve the point on the record. The Supreme Court has never passed upon the precise question and so far as I am aware no federal appellate court has done so, although there are some district court decisions dealing with the subject in which different conclusions have been reached.[2] I think it unnecessary, therefore, to further consider the particular point at this time.

The defendants' third plea sets. up the defense of the five-year period of limitations, to the extent it is applicable on the facts. The 5th plea is of a different nature. It presents the defense of former jeopardy based on the fact that on July 20, 1931 these defendants were indicted in this court for conspiracy to commit, during the period covered by the declaration in this case, certain offenses against the United States with regard to intoxicating liquor and the possession of denatured alcohol and recovery therefrom of distilled spirits and the diversion thereof to beverage purposes in violation of the Act of October 28, 1919, commonly known as the National Prohibition Act, 27 U.S.C.A. § 1 et seq., and also in violation of the Act of June 7, 1906, 34 Stat. 217 (26 U.S.C.A. §§ 1320 (a) and note, 1322, 1323); that they pleaded nolo contendere and the Alcohol Company was fined $10,000 and the Chemical Company (its wholly owned subsidiary) was fined $1.00, which fines were paid on March 26, 1932. The plea also expressly alleges that the suit is brought for *penalties* and that the Acts referred to in the indictment in the conspiracy case are the same as those for which the penalties (not taxes) are now sought to be recovered. The defense. is based on the Fifth Amendment which provides "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb;" and also on section 5 of the Willis-Campbell Act (42 Stat. 225), 27 U. S.C.A. § 3. The full text of the plea is copied in the margin.[3]

---

2 United States v. U. S. Industrial Alcohol Co., 8 F.Supp. 179, 184; United States v. Friedman, 8 F.Supp. 829; United States v. Spangenberg & Am. Surety Co. (D.C.S.D.N.Y.) March 7, 1935. [Not for publication].

3 "And for a fifth plea to said Declaration says, that the alleged liability sought to be asserted in this suit against this Defendant, is for penalties, and that this suit by reason of facts alleged in this plea, is barred by the former jeopardy,

The plaintiff's demurrer to this plea is based on the single point "that the moneys sought to be recovered are taxes and not penalties, and the former criminal proceedings alleged are no bar to this action." The single question thus presented by the demurrer to this 5th plea is whether the $6.40 per gallon tax sought to be recovered by the plaintiff's declaration is a pure tax or a penalty, in the sense of having been imposed as punishment for crime. In the former opinion in this case this question, though foreshadowed, was not decided. It was there said (8 F.Supp. 179, at page 183): "Nor are we now concerned with the question, dealt with in Murphy v. United States [272 U.S. 630, 47 S.Ct. 218, 71 L.Ed. 446], and United States v. La Franca [282 U.S. 568, 51 S.Ct. 278, 75 L.Ed. 551], supra, as to whether a conviction in a criminal prosecution under the National Prohibition Act is a bar to subsequent collection of so-called taxes which in essence are penalties. See, also, United States v. Jun, 48 F.(2d) 593 (C.C.A.10), and Various Items of Personal

Property v. U. S., 282 U.S. 577, 51 S.Ct. 282, 75 L.Ed. 558."

This difficult question with regard to the nature of the $6.40 per gallon tax on distilled spirits (growing out of the original enactment and subsequent repeal of national prohibition) has still never been expressly determined by the Supreme Court of the United States although it has been discussed particularly in two cases, United States v. One Ford Coupe, 272 U.S. 321, 328, 47 S.Ct. 154, 71 L.Ed. 279, 47 A.L.R. 1025, and Various Items of Personal Property v. U. S., 282 U.S. 577, 51 S.Ct. 282, 75 L.Ed. 558. In the latter, 282 U.S. 577, at page 579, 51 S.Ct. 282, 283, 75 L.Ed. 558, it was said by Mr. Justice Sutherland: "Included in the $6.40 is the basic tax of $2.20, which is not a penalty but a true tax. Only the remaining part of the $6.40 may be regarded as a penalty; but, whether the exaction be a tax or a penalty or partly one and partly the other, there is no constitutional objection to enforcing it by forfeiture of the offending property. See United States v. One

---

indictment, conviction and punishment of this Defendant upon and for the identical alleged acts and offenses which are charged and set forth in said Declaration, both by virtue of section 3, Title 27 of the United States Code [27 U.S.C.A. § 3], being chapter 134, section 5, 42 Stat. 223, otherwise known as the Willis-Campbell Act, and by reason of the Fifth Amendment to the Constitution of the United States; in that on or about the 20th day of July, 1931 this Defendant was indicted in the District Court of the United States for the District of Maryland by an indictment bearing No. 15027 on the Criminal Docket of this Court, for conspiracy with divers other persons and corporations therein named, to commit during the period commencing July 1, 1927 and ending on the day of the returning of said indictment, July 20th 1931, certain acts and offenses against the United States, including the possession, manufacture, sale, transportation and delivery of intoxicating liquor, and the possession of denatured alcohol and the recovery therefrom of distilled spirits and the diversion thereof to beverage purposes, all in violation of the provisions of the Act of October 28th, 1919, commonly known as the National Prohibition Act, and acts amendatory thereof and supplemental thereof, and to commit certain offenses in violation of the Act of June 7, 1906, 34 Stat. 217 [26 U.S.C.A. § 1320(a) and note, 1322, 1323]; and that thereafter certain of the persons who are named as defendants in said indictment,

including this defendant, moved said Court for permission to enter pleas of nolo contendere to said indictment; whereupon an order was made and entered therein, granting said motions and permitting the entry of said pleas, and treating the same as pleas of guilty for the purpose of said case; and that thereafter on the 29th. day of February, 1932 such a plea of nolo contendere was duly entered in open court in said case on behalf of this Defendant and on the 23rd day of March, 1932, judgment was entered on said plea in said Court, fining this Defendant in the sum of ten thousand dollars, which fine this Defendant paid on March 26, 1932, in satisfaction of said judgment, whereupon the payment of said judgment by this Defendant was duly recorded and entered upon said Criminal Docket of said Court.

"And the Defendant further says that the acts and offenses charged in said indictment comprised and included all of the acts, offenses and transactions alleged in said Declaration, either by express allegation thereof or by general allegations under which each and every fact alleged in said Declaration might have been proven and shown in evidence against this Defendant, under said indictment; and further says that there is no act or offense charged, nor facts or transactions alleged in the Declaration herein, which might not have been proven and shown in evidence against this Defendant under said indictment."

Ford Coupe, 272 U.S. 321, 328, 329, 47 S. Ct. 154, 71 L.Ed. 279, 47 A.L.R. 1025."

There are, however, two Circuit Courts of Appeals decisions which are directly in point, one in the 10th Circuit decided March 10, 1931 and therefore during the era of national prohibition, United States v. Jun, 48 F.(2d) 593; and the other in the 6th Circuit, United States v. Glidden Co., decided June 29, 1935, 78 F.(2d) 639 (after repeal of the Eighteenth Amendment). In both cases the Government sued to recover the $6.40 per gallon tax. And one of the defenses in each of the cases was a former conviction for the same acts on which the tax recovery was based. In both cases it was held the defense of former jeopardy was a complete defense to the Government's claim. The Glidden Case is particularly in point because the facts are almost identical with the case under consideration. The Glidden Company had also in 1931 been indicted in this court for conspiracy of the same sort as that charged against the Alcohol Company and the Chemical Company by separate indictment, and it also pleaded nolo contendere and was fined and paid $10,000. Subsequently it was sued by the Government (acting by the same counsel as in the present case) to recover upwards of $2,000,000 of taxes and interest under subdivision (4) of section 900 of the Revenue Act of 1926 (26 U.S.C.A. § 1150 note). It also pleaded, among other defenses, limitations and former jeopardy to which pleas the Government demurred. These defenses were sustained by the district court [8 F. Supp. 177] and its judgment affirmed on appeal, in an extended opinion of the Court by Circuit Judge Simons [(C.C.A.) 78 F. (2d) 639].

Additional significance is, I think, to be attached to the Glidden Case by reason of the circumstances accompanying the denial of certiorari by the Supreme Court and its relationship to the case of United States v. Constantine, 296 U.S. 287, 56 S.Ct. 223, 80 L.Ed. 233, decided December 9, 1935. In that case the Supreme Court held that "a 'special excise tax' of $1000 on such [retail liquor] dealers when they carry on the business contrary to local state or municipal law," with fine and imprisonment for failure to pay, was not a true tax, but a penalty for a violation of a state law and invalid because a usurpation of the police powers of the states. A week later, December 16, 1935, the Supreme Court denied the petition for a writ of certiorari in the Glidden Case,

296 U.S. 652, 56 S.Ct. 367, 80 L.Ed. 464. In the Government's brief for certiorari in the Glidden Case, filed prior to the decision in the Constantine Case, it was said: "We submit that the instant case is analogous in principle to the case of United States of America v. Gus L. Constantine, Alias Dr. Gus, 296 U.S. 287, 56 S.Ct. 223, 80 L.Ed. 233, certiorari granted June 3, 1935, 295 U.] S. 730, 55 S.Ct. 922, 79 L.Ed. 1679. Here, as in that case, we contend that we are concerned with a measure enacted prior to the ratification of the Eighteenth Amendment, purely for revenue purposes and by amendment continued as such." It appears that an important question in each case was whether the so-called tax was a true tax or a penalty. It is of course clearly understood that the denial of certiorari in any case is not to be considered an implied approval of the decision below, but the importance of the Glidden Case in connection with other suits for large amounts of a similar nature then pending and referred to in the Government's brief for certiorari, and in the relation already described to the Constantine Case, seems to make the Glidden decision of special significance on this difficult question of tax or penalty. But entirely apart from this, I feel that in view of the difficulty of the question and the lack of express decision by the Supreme Court on the point, I should follow the decisions of the 6th and 10th Circuits, as authoritative. This has been in accordance with the general policy in this court, to follow a decision of a federal Circuit Court of Appeals where it is the only decision on the point, in the absence of contrary decision by the Supreme Court. In this view of the matter it becomes unnecessary to undertake a separate appraisal of the legal nature and characteristics of $6.40 per gallon exaction as to whether it is wholly a tax or wholly a penalty or partly a tax and partly a penalty. As hereinafter more fully noted, the declaration contains but a single count and seeks to recover from the defendants as the persons responsible for the diversion of industrial alcohol to beverage purposes, the whole of the $6.40 per gallon exaction as an entity. Therefore, taking the plaintiff's claim as made, the whole of the $6.40 exaction as here claimed, must be treated as a penalty under the authorities cited. And if the amount sued for is to be treated as a penalty, then it is conceded the former conviction and punishment of the defendants for the same acts constitutes an ample defense to this suit. Various Items of Personal

Property v. U. S., 282 U.S. 577, 51 S.Ct. 282, 75 L.Ed. 558; United States v. La Franca, 282 U.S. 568, 51 S.Ct. 278, 75 L.Ed. 551.

There is, however, one point of difference between the Glidden and the present case. In the former the Glidden Company was not itself a manufacturer or distiller of spirits but bought them in denatured condition under permits therefor, and the charge made by the Government was that it in turn sold them with knowledge and intent that they should be and they in fact were "cleaned" and diverted to beverage purposes. There was therefore in the Glidden Case no possibility under any conditions that the defendant could be held liable as a distiller for the basic tax imposed on the original withdrawal of the spirits from the bonded warehouse. It was said in the Glidden Case: "The basic tax laid by section 900 of the 1926 Revenue Law was imposed upon all distilled spirits produced or imported into the United States, to be paid by the distiller or importer when withdrawn. Subdivision 4 of that section imposed an additional exaction on such distilled spirits as are 'diverted to beverage purposes' to be paid, not by the distiller or importer, but by 'the person responsible for such diversion,' with a credit for the basic tax if previously paid. Since the defendants were neither distillers nor importers, and have paid no basic tax, the exaction here sought to be recovered is either wholly a penalty or wholly a tax, and is not partly penalty and partly tax."

In the present case, however, it appears from the long narrative in the plaintiff's declaration that one of the defendants, the Alcohol Company, was a manufacturer and distiller of spirits and bonded warehouseman in which the spirits were stored. And by reason of this fact plaintiff's counsel raises a technical point of pleading with regard to the sufficiency of the plea as an answer to the whole of the plaintiff's declaration. The argument as made is that the plaintiff's declaration is broad enough to permit a recovery of the basic tax of $1.10 per gallon, which should have been paid by the distiller upon withdrawal from bond, even though the whole $6.40 per gallon is not recoverable. The logical conclusion from this contention if sustainable (under the Maryland rule of pleading which is still fundamentally that of the common law) would be that, the plea being an answer to part only but not the whole of the plain- tiff's claim, would be bad, in that it professes to be an answer to the whole and not to part. Poe on Pleading and Practice in Maryland (Tiffany's Ed.) vol. 1, § 644, p. 692; see, also, Karthaus v. Owings, 2 Gill & J. (Md.) 430; Lake v. Thomas, 84 Md. 608, 36 A. 437. On this point counsel for the defendant, erroneously I think, submit the view that if the plea is good as to part of the amount of the plaintiff's claim, but not as to the whole, nevertheless the plea should be sustained and the demurrer overruled. And in this event plaintiff's counsel propose to file a replication in effect as I understand it, limiting their claim to the $1.10 rate as contrasted with the $6.40. But as the point has been made that the declaration as drawn is sufficient to permit a recovery in the alternative of the $1.10 rate, it is necessary to consider this. After carefully rereading the declaration it is my opinion that it cannot be treated as including a claim for the $1.10 rate. The case is quite unlike the ordinary case where the plaintiff sues for a named sum of money as damages and recovers something less. Here the whole structure of the one lengthy count of the declaration is based on the theory that the defendants became liable for the $6.40 rate (which alone is named and claimed) because they were the "persons responsible" for the diversion of the distilled spirits to beverage purposes. Or, in other words, they were not sued as distillers for the $1.10 rate on withdrawal of the spirits, but as diverters who became liable to the $6.40 rate. And indeed the case against the Chemical Company, which seems to be inextricably interwoven in the declaration with the Alcohol Company, was itself not a distiller or manufacturer of spirits; and therefore it is not readily apparent how it could be made liable for the $1.10 rate which is payable by the distiller upon original withdrawal from the bonded warehouse. But however this may be, the point is that the declaration as a whole sets up a joint liability of the two defendants for the $6.40 rate based on the charge that they became the persons responsible for the diversion. This is a theory for the recovery of the tax quite different from that which would be set up if the $6.40 rate were disregarded and recovery sought to be had from the distiller or manufacturer for original withdrawal from the warehouse at the $1.10 rate.

If it had been intended to make such a claim in the alternative, the proper rule of pleading would have been to insert in the

declaration separate counts appropriate to the several contentions; and this the plaintiff has done in several analogous suits against other defendants filed in this court shortly after the institution of this suit. It is possible that within the four corners of the lengthy declaration as now drawn there are to be found embedded facts which, when appropriately segregated and presented by themselves would constitute a prima facie claim for the $1.10 rate. But in a case so important and legally difficult as is the present one, it is not within the reasonable rules of pleading to permit a declaration framed at great length on one theory to be in effect re-arranged and re-constructed in order to present an alternative theory. Such loose construction of pleadings would inevitably lead to confusion in reaching the certain and definite issues which it is the function of pleading to present for the determination of the jury. No opinion is intended to be here expressed on the merits as to whether upon appropriate pleading the plaintiff will be legally entitled to recover the $1.10 rate against either or both of the defendants.

The demurrer to the fifth plea must therefore be overruled.

■ The demurrer to the third plea must also be overruled. It says "that the alleged taxes for which this suit is brought are penalties which did not accrue or become due within five years before this suit." The plea if good is apparently an answer to only a very small part of the plaintiff's claim. The suit was brought on June 13, 1934, and a five-year period theretofore covers the very much greater portion of the defendants' activities for which the tax recovery is sought. The point of law involved is simply whether the applicable federal statute is section 791 of title 28 U.S.C.A., as contended for by the defendants, or section 106 of title 26 U.S.C.A., see 26 U.S.C.A. § 1432 (b) and note (Revenue Act, 1926, § 1109 (a) (2), 44 Stat. 114) as maintained by the plaintiff. Section 791 provides: "No suit or prosecution for any penalty or forfeiture, pecuniary or otherwise, accruing under the laws of the United States, shall be maintained, except in cases where it is otherwise specially provided, unless the same is commenced within five years from the time when the penalty or forfeiture accrued." On the other hand, section 106 of title 26 U.S.C.A. provides: "In case of a false or fraudulent return with intent to evade tax, or a failure to file a return within the time

required by law, or of a willful attempt in any manner to defeat or evade tax, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time." (See now, section 1432 (b) and note of title 26 U.S. C.A.) The only reason assigned for the demurrer to this plea is that what the plaintiff is seeking to recover is taxes and not penalties. As it has already been determined that the amount sued for must be considered penalty rather than tax, it follows that the plea is good insofar as it may be applicable on the facts and the demurrer must therefore be overruled. Here the plea of limitations is not required to be an answer to the whole of the plaintiff's claim but must be pleaded to be effective as a defense against such part of the claim in point of time as may be subject to limitations.

■ Defendants' counsel, acting on the rule of pleading that the demurrer to the pleas mounts to the declaration, raise a new point on the alleged insufficiency thereof. They now say that the facts alleged do not show that the defendants are liable to the so-called tax as the "persons responsible" for the diversion of the alcohol to beverage purposes. It is pointed out that they operated throughout under licenses or permits to deal in industrial alcohol and that it is not alleged that the defendants themselves at any time "cleaned" the denatured alcohol or lacquer thinner, or otherwise chemically treated it so that it could be used for beverage purposes. They point out that all that is alleged against them is that when they sold the denatured alcohol or lacquer thinner, it was with the "knowledge and design" that it would be chemically treated by others and rendered useable for beverage purposes. The contention is that this state of knowledge or mental intent in connection with the sale is not legally sufficient to make the defendants personally responsible for the subsequent physical act by others of treating the alcohol so that it would be rendered potable. It is pointed out that what the plaintiff is suing for in the declaration is a tax, which did not become due until the defendants had sold and parted with all control over the denatured alcohol and therefore could not be liable for the tax which by the statute was imposed on the person responsible for the actual diversion of the alcohol to beverage purposes. The distinction is made between civil liability for a particular tax and criminal responsibility for a conspiracy to violate federal statutes.

The contention is not without force; in view of the vague and uncertain language of the declaration in the allegation as to the very important matter of the relationship of the defendants to the ultimate reconversion of the alcohol for beverage purposes. On the other hand the charge as made has some resemblance to the circumstances considered by the Supreme Court in the case of Various Items of Personal Property v. U. S., 282 U.S. 577, 51 S.Ct. 282, 75 L.Ed. 558. That was a proceeding by the Government to forfeit a distillery warehouse and denaturing plant on the ground that the corporation had conducted its distilling business upon the premises with intent to defraud and had defrauded the Government of taxes on spirits distilled. The fraud alleged was withdrawal of alcohol ostensibly for non-beverage purposes but in reality for beverage purposes, without payment of the tax on spirits diverted to beverage purposes imposed by section 600 (a) of the Revenue Act of 1918, as amended, 26 U.S.C.A. § 245, see 26 U.S.C.A. §§ 1150 note, 1150 (f), 1275 (a) (2). In 282 U.S. 577, at page 580, 51 S.Ct. 282, 283, 75 L.Ed. 558, it was said: "The alleged diversion was accomplished by the withdrawal of pure alcohol, which was then specially denatured and made unfit to drink, and in that condition was sold. Petitioners contend that this was a diversion not of distilled spirits, but of denatured alcohol, and, therefore, not within the reach of section 600 (a). But upon the evidence and the instructions of the court it was open to the jury to find that the alcohol was specially denatured to the contemplated end that, after it had passed into the hands of purchasers, it would be 'cleaned' and finally used for beverage purposes. In that view it is entirely accurate to say that the alcohol was diverted to beverage purposes, the special denaturing being only an intervening step."

Whether the two cases are more than superficially similar will doubtless be determined by the proof if the case proceeds to trial. It is generally not desirable to decide close questions on demurrer; and I think it inadvisable to rule now on the point especially as there is pending a question as to the sufficiency of a bill of particulars, and it is possible there may be subsequent amendment of the pleadings.

The demurrers to the third and fifth pleas are hereby overruled. Counsel for the plaintiff are of course entitled to reply to the pleas in accordance with the rule of court.