## CADWALADER *v.* WANAMAKER.[1]

**ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF PENNSYLVANIA.**

No. 31. Argued April 11, 12, 1893. — Decided May 15, 1893.

Imported articles, commercially known as ribbons, composed wholly or partly of silk and chiefly used for trimming hats, bonnets, or hoods, are dutiable at twenty per centum ad valorem, under Schedule N of the tariff act of March 3, 1883, 22 Stat. 488, c. 121.

The case of *Hartranft* v. *Langfeld*, 125 U. S. 128, cited and approved.

The case *Robertson* v. *Edelhoff*, 132 U. S. 614, cited, distinguished and approved.

The firm of John Wanamaker brought an action in the Court of Common Pleas of Philadelphia, State of Pennsylvania, against John Cadwalader, the collector of customs for that district, wherein it was sought to recover from the defendant moneys paid under protest by the plaintiffs to the defendant as collector of customs, as duties, in order to obtain possession of merchandise imported for the plaintiffs, which moneys were demanded and collected by defendant in excess of the amount authorized by law. This action was certified to the Circuit Court of the United States for the Eastern District of Pennsylvania, and there resulted in a verdict and judgment in favor of the plaintiffs, from which judgment the case is brought into this court by a writ of error.

The matter in controversy arose under the tariff act of March 3, 1883. 22 Stat. 488, c. 121.

The plaintiffs claimed the imported articles were dutiable under Schedule N, which was in the following terms:

"Hats, and so forth, materials for: Braids, plaits, flats, laces, trimmings, tissues, willow sheets and squares, used for making or ornamenting hats, bonnets, and hoods, composed

---

[1] Together with this case were argued the cases of *Walker* v. *Seeberger*, No. 151, *post*, p. 541, and *Hartranft* v. *Meyer*, No. 860, *post*, p. 544.

of straw, chip, grass, palm leaf, willow, hair, whalebone, or any other substance or material, not specially enumerated or provided for in this act, twenty per centum ad valorem." (22 Stat. 512.)

The defendant contended that he was right in having assessed the articles under Schedule L, which provided as follows:

"All goods, wares, and merchandise, not specially enumerated or provided for in this act, made of silk, or of which silk is the component material of chief value, fifty per centum ad valorem." (22 Stat. 510.)

In applying these respective clauses, the plaintiffs claimed that articles chiefly used to trim hats with are trimmings, dutiable at twenty per cent. The defendant claimed that articles are not materials for hat trimmings, when the imported articles bear the commercial name of ribbons, or belong to that commercial class; that, being made of silk, the imported articles in question fell within Schedule L; and, that if the jury believed that the articles belonged to the class commercially distinguished under the general name of ribbons, then the plaintiffs could not recover, even if their chief use was as trimmings for hats, as claimed by the plaintiffs.

The issues thus raised were submitted to the jury in a charge, the correctness of which is the subject of our judgment.

The essential deliverances of the court, which determined the verdict of the jury, were in these words:

"Upon the uncontroverted proofs in this case, ribbons are trimmings. The issue here is, what kind of trimmings are the particular ribbons in controversy? Are they trimmings chiefly for hats, bonnets, or hoods? This is a question of fact for the jury, which, if answered in the affirmative, entitles the plaintiff to recover. I instruct you accordingly.

"If you are satisfied under the evidence, considering the preponderating weight of it, that these kinds of ribbons, such as you have here, are commonly and usually used for the ornamentation of hats, then the character of these goods is determined.

"These are the two facts that you are to consider and determine by your verdict: First, are these ribbons, of which you have samples here, trimmings within the section of the act of Congress? And, secondly, if so, are they used more largely than for any other purpose in the making and ornamentation of hats, bonnets, and hoods? These are the two facts, and as you determine them this case must be decided.

"In a case that was decided by the Supreme Court, which went up from this district, the Supreme Court has unquestionably held that articles which come within the description of this clause of the act are subject only to a duty of 20 per cent. That is, if they are trimmings, and if they are used for making and ornamenting hats, they are classifiable under this clause of the act of Congress, and are subject to a duty of only 20 per cent.

"It is immaterial to inquire whether the Supreme Court in terms has said anything about the silk clause. They have determined that articles which are of the character described here and for the use stated come within that clause, and are subject only to a duty of 20 per cent. That is incontestable. So that by that ruling of the Supreme Court we are governed, and must so expound the law in cases occurring afterwards and relating to articles of a similar character."

This case was argued with *Walker* v. *Seeberger*, No. 151, *post*, 546, and *Hartranft* v. *Meyer*, No. 860, *post*, 549. On motion of *Mr. Solicitor General* three hours were allowed each side in the argument of the cases; and, on motion of *Mr. A. H. Garland*, of counsel for plaintiff in error in No. 151, three counsel were allowed to be heard for the importers:

*Mr. Solicitor General* opened for the collectors and the government.

*Mr. A. H. Garland* followed for the plaintiff in error in No. 151.

*Mr. Frank Pritchard* followed for the defendants in error in No. 31 and for the defendants in error in No. 860.

*Mr. Joseph H. Choate* followed for the defendants in error in No. 31 and for the defendants in error in No. 860. *Mr. Henry Edwin Tremain* and *Mr. Mason W. Tyler* were on *Mr. Choate's* brief.

*Mr. Solicitor General* closed for the collectors and the government. The following is a summary of his argument.

It is with no intention of questioning the high authority of this court, and with no desire to transgress the limits of proper discussion at this bar, that I assert that the construction contended for by the importers is not authorized by the language alone of the act of March 3, 1883. I, therefore, request that I may be permitted in the first instance to argue the question involved as an original one, before proceeding to discuss the two cases which it is insisted in behalf of the importers are decisive of those at bar.

The articles in question are within the silk schedule of the tariff act of March 3, 1883, and are also within the terms of the act of February 8, 1875. To classify them under the hat-material clause an inquiry has been made into the *use* of the materials, and it having been ascertained that they were used for many purposes, the inquiry was then extended to their so-called *chief* use. In behalf of the United States, it is insisted that there is a difference between an *article* and a *material*; that one is nominative, distinctive in its character, implying the idea of a completed, independent thing, while the other is general, embracing the substance from which articles are made. The words "braids, plaits, flats, laces, trimmings, tissues, willow sheets and squares," each denominate an *article* as distinguished from the materials of which it is made; this requires that to the word "trimmings" should be given its ordinary meaning, which is, an *article* used as an ornamental fitting; therefore, evidence as to the chief use of the *materials* from which trimmings are made is beyond the scope of the statute. Attention is called to the fact that no attempt was made to limit this inquiry to the date of the act of 1883, and prior thereto, (*Rossman* v. *Hedden*, 145 U. S. 561, 570,) but

in the cases decided against the government the inquiry related to the date of the trial.

The doctrine of *chief use* is not found in the statute, is impracticable in application, and renders the law uncertain.

The words "not specially enumerated as provided for in this act" limit and qualify the words "other substance or material" and not the words "braids, plaits, flats, laces, trimmings, tissues, willow sheets and squares," and therefore the articles in controversy are not entitled to classification under this clause even if it be admitted, for sake of argument, that they are "trimmings" used for making or ornamenting hats, bonnets and hoods, because they are not composed of straw, chip, grass or any other material not specially enumerated, but on the contrary are composed of silk, a substance or material which is specially provided for in the act.

The act of February 8, 1875, established a rule of classification for all goods made of silk or of which silk is the component material of chief value, with certain exceptions not embracing the articles in controversy. This act is yet in force, except as to rates of duty established by act of March 3, 1883. This latter act was only intended and declared to be a substitute for Title 33 of the Revised Statutes of the United States, of which the act of February 8, 1883, never formed a part. Repeals by implication are not favored.

In each of the cases at bar, it being conceded that the goods were made either of silk or of silk as their component material of chief value, it follows that they are within the silk clause, and therefore, so far, at least, subject to the duty at the rate of 50 per centum ad valorem. The question then arises, are they also within the hat-material paragraph, and hence also subject to the 20 per centum rate? That question was left to the jury in the *Cadwalader* and *Hartranft* cases. In the *Walker* case the jury was instructed to bring in a verdict for defendant if they found the goods were composed of silk or of silk as their component material of chief value. It being conceded that they were so composed, that instruction ended the case.

The argument then, deals with these two questions:

First. Are the goods classifiable for duty under the hat-material clause of the act of 1883?

Second. If both the hat-material clause and the silk clause of 1883 are literally applicable to the given articles, which clause prescribes the legal rate of duty?

The question of predominant or chief use is one not susceptible of proof by expert or opinion evidence. In these cases the inquiry was not what the articles were, for what they were purchased, or of what composed, nor yet to what use they were adapted, but *to what use they were the more generally put.* The witnesses, being importers or employés of importers, could have no familiar knowledge of the actions or conduct of consumers merely because they were employed in such walks of life. There is a difference between evidence of the fact that any given article has been put to a certain use, and evidence that a larger quantity of the article is consumed in the one use than in any other, especially when predicated as in these cases, of articles used for many purposes, and throughout the country, and in different quantities at different times. Herein lies the difference between guessing and expert opinion, which latter, *within the limits of personal observation* or study, is deemed a relevant fact.

The popular or received import of words furnishes the general rule for the interpretation of public laws as well as of private transactions. *Maillard* v. *Lawrence,* 16 How. 251. According to this test, even upon the testimony of plaintiffs' own witnesses, the articles in dispute are popularly known as ribbons, chinas and marcelines. This brings the cases squarely within *Schmeider* v. *Barney,* 113 U. S. 645, 647, 648.

The doctrine of chief use as applied in the *Cadwalader* and *Hartranft* cases has never received the approval of this court. In the *Langfeld* case (125 U. S. 128) where the goods in controversy were velvet ribbons, the court assures us that "there was no controversy in the evidence as to whether these velvet ribbons were or were not trimmings; all the witnesses agreed that they were." (p. 133.) In deciding that case the court meant only to hold that the ordinary habitual use of the article

should be considered, and this was not to be defeated by proof of a single or occasional use for some other purpose.

Although in the *Edelhoff* case (132 U. S. 614) it is said that the words "not specially enumerated or provided for in this act" relate to the eight articles, (braids, plaits, flats, etc.,) and not to the words "hats, bonnets, and hoods," it is submitted that they should be held to limit and modify specially the words "other substance or material" and that a "trimming," used for *making* or *ornamenting*, a hat or hood could be classified under this clause, *only* when composed of the materials specially enumerated, or of some "other substance or material" that is not specially enumerated or provided for elsewhere in the act. If the article to be classified is found to be a trimming composed of none of the substances named, but of a substance or material specially enumerated or provided for in the act, it is not within this clause of the statute, and the court should have directed a verdict for the government.

In cases at bar the goods are composed wholly or partly of silk. In Schedule L a *substance* or *material* known as "silk" is both "enumerated" and "provided for" in the act. It follows that goods composed of such substance or material cannot properly be classified under the hat-material clause, wherever else they may belong.

The word "trimmings" is properly defined as "anything used for decoration or finish; an ornamental fitting of any sort; usually in the plural: as the trimmings of a harness or of a hat. . . . Hence any accessory or accompaniment, usually in the plural." Cent. Dictionary, *sub.* "trimming." In the *Hartranft* and *Cadwalader* cases the jury were instructed that they should not give the term "trimmings" any technical or particular commercial meaning. They were substantially told that the question was whether the goods in controversy were "materials out of which trimmings for hats were made." This was a misconception of the language of the clause in question. If the court shall hold that the words "not specially enumerated or provided for" refer to and limit the words "substance or material," then, practically, all the instructions in the *Cadwalader* and *Hartranft* cases were

erroneous and the action in the *Walker* case correct; and upon such a holding there is an end to the "hat-material" controversy.

MR. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.

It will be observed that the court below was controlled in its charge by the decision of this court in the case of *Hartranft* v. *Langfeld*, 125 U. S. 128, and construed that decision as ruling that, if the imported articles were trimmings, and were more generally used for the ornamentation of hats than for any other purpose, then such articles must be regarded as coming within Schedule N of the tariff act of 1883, and subject to a duty of 20 per centum.

An examination of that case, in the light of the extended criticism bestowed upon it in the briefs filed in the present case, satisfies us that the court below did not misinterpret the decision. The case was, in all important respects, like the present one. It was an action by an importer to recover an alleged illegal excess of duties, and wherein ribbons made of silk and cotton, of which silk was the material of chief value, were the articles in question. The testimony on the part of the plaintiff tended to show that the ribbons were chiefly used in making or ornamenting hats, bonnets, and hoods, but that they might be, and sometimes were, used for trimming dresses. The testimony on the part of the defendant tended to show that they were dress trimmings equally with hat trimmings, and were commonly used as much for the one purpose as the other. In this state of the evidence the trial court charged the jury thus : " It is the use to which these articles are chiefly adapted, and for which they are used, that determines their character within the meaning of this clause of the tariff act. . . . It is the predominant use to which articles are applied that determines the character. . . . You will, therefore, determine to which use these articles in question are chiefly devoted. If they are hat trimmings, and used for making and ornamenting hats, then the rate of duty was excessive. . . .

The question is simply and purely one of fact, namely, what is the predominant use to which these articles are devoted? As you determine that question you will return your verdict." These instructions were approved by this court, and the judgment of the court below in favor of the importer was affirmed.

It is quite apparent that if the law was correctly laid down in *Hartranft* v. *Langfeld*, the court below, in the present case, did not err in its treatment of the subject. Substantially the same question came afterwards before this court in the case of *Robertson* v. *Edelhoff*, 132 U. S. 614, on error to the Circuit Court for the Southern District of New York. Again the question was as to the correct classification, under the act of March 3, 1883, of ribbons composed of silk and cotton, in which silk was the component material of chief value. The court below gave peremptory instructions to the jury to find for the plaintiff, the undisputed evidence being that the articles in question were used exclusively as trimmings for ornamenting hats and bonnets, and had a commercial value only for that purpose. And this action of the trial court was approved by this court in an elaborate opinion.

It will be noticed that the case of *Robertson* v. *Edelhoff* differs from the case of *Hartranft* v. *Langfeld*, and from the present case, in the particular that the fact was conceded that the ribbons in question were exclusively used for hat trimmings, and that question was not submitted to the jury; whereas in the other cases there was conflicting evidence as to the use made of the ribbons, and it was submitted to the jury to find what was the chief or predominant use made of the articles.

In view of these decisions of this court, it is evident that the court below, in the present case, cannot be convicted of error.

A very earnest and able effort has been made, on behalf of the government, to lead us to reconsider the doctrine of those cases.

We have read with care the elaborate briefs submitted to us by the Solicitor General, but as we are unable to accept

the conclusions there urged upon us, nothing would be gained by a minute discussion of the several arguments advanced. If the subject had come before us unembarrassed by previous decisions it would have been worthy of a more thorough discussion. As it is, we are content to abide by the views that have heretofore prevailed in this court, expressed in two unanimous decisions.

The judgment of the court below is accordingly

*Affirmed.*

Mr. Justice Brewer and Mr. Justice Brown concurred in the judgment for reasons stated in the dissenting opinion in *Hartranft* v. *Meyer*, No. 860, *post*, 544.