### UNITED STATES v. WANAMAKER.

(Circuit Court, E. D. Pennsylvania. January 28, 1905.)

#### No. 74.

CUSTOMS DUTIES—PING-PONG BALLS—TOYS.

    *Held*, that ping-pong balls, which were sometimes sold as toys before the game of ping-pong was invented, and which have been occasionally sold for the same purpose since the game went out of vogue, but which, when imported, were not intended to be used chiefly as toys, but in the game of ping-pong, are not dutiable as "toys," under paragraph 418, Tariff Act July 24, 1897, c. 11, § 1, Schedule N, 30 Stat. 191 [U. S. Comp. St. 1901, p. 1674].

On Application for Review of a Decision of the Board of United States General Appraisers.

John C. Swartley and J. Whitaker Thompson, for the United States. Wm. L. Nevin, for defendant.

J. B. McPHERSON, District Judge. In April and May, 1902, John Wanamaker imported certain merchandise into the port of Philadelphia, which was invoiced and imported as "ping-pong balls." They were small white balls, of celluloid, about 1½ inches in diameter; and the question for decision is whether they should be classified as toys, or as a finished article, "of which collodion or any compound of pyroxylin is the component material of chief value." If they are toys, they should be classified under paragraph 418 of the tariff act of July 24, 1897, c. 11, § 1, Schedule N, 30 Stat. 191 [U. S. Comp. St. 1901, p. 1674].

"418. Dolls, dolls' heads, toy marbles, of whatever materials composed, and all other toys not composed of rubber, china, porcelain, parian, bisque, earthen or stone ware, and not specially provided for in this act, 35 per centum ad valorem."

If the other classification is correct, however, the rate of duty is fixed by paragraph 17, Schedule A, 30 Stat. 152 [U. S. Comp. St. 1901, p. 1628]:

"17. Collodion and all compounds of pyroxylin, whether known as celluloid or by any other name, fifty cents per pound; rolled or in sheets, unpolished, and not made up into articles, sixty cents per pound; if in finished and partly finished articles, and articles of which collodion or any compound of pyroxylin is the component material of chief value, sixty-five cents per pound and 25 per centum ad valorem."

The collector assessed the duty under paragraph 17, and against this action the importer duly protested. The record contains a special report to the collector by a local appraiser at the port of Philadelphia, declaring that the balls were made from celluloid, and were finished articles of collodion. The board of General Appraisers heard also the testimony of a witness who said that the articles were used in playing the game of ping-pong, and that both children and grown persons took part in the play. The board, relying upon G. A. 1,644, and an unpublished decision rendered in April, 1903, reversed the collector in June of that year, and held the merchandise to be toys. Thereupon the collector presented the pending petition for review, and further testimony has been taken concerning the use of such balls at the time of importation, as well as before and since that date.

The same question was raised in United States v. Strauss (C. C.) 128 Fed. 473, where ping-pong balls were decided to be toys by the Circuit Court for the Southern District of New York; but that decision was reversed a few days ago by the Court of Appeals for the Second Circuit, in an opinion published in 136 Fed. 185, of which a copy is now in my hands. The following extract will disclose the ground of the decision:

"No evidence was taken, either before the board or in the Circuit Court. The argument in the court below was confined to the question whether, in the absence of any evidence upon a question of fact, the Board of General Appraisers had the power to reverse the finding of fact by the collector.

"It is unnecessary to consider how far this argument might be applicable in a case where the collector had acted upon the evidence of witnesses produced before him. It has no relevancy to the question at issue in the case at bar, where the only evidence consisted in the articles themselves. The collector, the board, the court below, and this court are all equally entitled to avail themselves of such information as may be derived from an inspection of the articles in connection with the facts of common knowledge and experience of which judicial notice may be taken. Here it does not even appear that the Board of General Appraisers based their decision either upon inspection of these specific articles, or upon the facts of which they were entitled to take judicial notice. It appears from their opinion that they found the articles to be toys because they 'are of the same general character as those passed upon in' certain prior decisions. Said decisions are not incorporated in the record, and this court is without information as to whether the former conclusions were reached upon the hearing of testimony or upon inspection of the articles, or otherwise. We are unable to concur in the conclusion of the board that these articles are toys. A toy is defined as follows:

" 'An article constructed for the amusement of children; a plaything, as a doll or Noah's ark; hence any trifling or amusing object; any bauble or knickknack; trinket; trifle.' Standard Dictionary.

"We cannot close our eyes to the fact that the game of ping-pong is ordinarily played on a table which is of such a height that it would be difficult for children to play the game; that it is a game indulged in by adults, and

one which requires a degree of skill not ordinarily possessed by children; and that ping-pong balls are sold in stores where athletic goods, such as footballs and baseballs, tennis and golf balls, are sold. The fact that small boys indulge in games of baseball and football does not serve to bring the balls within the category of toys. These ping-pong balls are imported and sold to be used in a game of skill played by adults."

The present case differs from United States v. Strauss in the fact that, while no evidence was offered there at any stage of the proceedings, several witnesses have testified here, and their testimony must be considered. I shall not discuss it in detail, but content myself by saying that it does not oblige me to come to a different conclusion from that which was reached in the Court of Appeals for the Second Circuit. It showed that such balls as these were sometimes sold as toys before the game of ping-pong was invented, and that since the game has gone out of vogue they are sold occasionally for the same purpose; but the fact is undoubted that, when the importation was made, the balls were not intended chiefly to be sold as toys, but to be used in the game, and this predominant use determines their character for present purposes. Cadwalader v. Wanamaker, 149 U. S. 539, 13 Sup. Ct. 979, 983, 37 L. Ed. 837. I do not think much significance is to be attached to the fact that they may be bought in some toy stores, as well as in stores where athletic goods are sold. If the testimony is to be considered as leaving the predominant use in doubt—and that is the best that can be said for it, although it is not my own opinion—the Circuit Court should not resolve the doubt against the positive decision of the Court of Appeals.

The decision of the Board of General Appraisers is reversed, and the classification of the collector is affirmed.