UNITED STATES v. UNITED STATES INDUSTRIAL ALCOHOL CO. et al.

No. 4361.

Circuit Court of Appeals, Fourth Circuit.

March 29, 1939.

Frank J. Ready and J. Louis Monarch, Sp. Assts. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key, James M. Hoffa, of Baltimore, Md., and Larkin H. Jennings, Sp. Assts. to Atty. Gen., on the brief), for the United States.

Thomas D. Thacher, of New York City (Venable, Baetjer & Howard and Edwin G. Baetjer, all of Baltimore, Md., and Sanford H. E. Freund, of New York City, on the brief), for appellees.

Before NORTHCOTT and SOPER, Circuit Judges, and WYCHE, District Judge.

WYCHE, District Judge.

In this action the United States Government seeks to recover from the defendants taxes in the sum of $8,140,514.88, alleged to be due under the Revenue Act of 1926.[1]

The declaration alleges substantially that during 1929 and 1930, the defendants, United States Industrial Alcohol Company, and its wholly owned subsidiary, United States Industrial Chemical Co., Inc., had industrial alcohol plants and bonded warehouses at Baltimore, Maryland, and were engaged in the business of manufacturing and selling industrial alcohol, and in the course thereof withdrew from bond large amounts of distilled spirits from their bonded warehouses under the false and fraudulent representations that they were to be used for industrial purposes only, but really with the design and intent that after said distilled spirits had been denatured and manufactured by them into a product called "lacquer thinner" the latter was to be chemically treated and the alcohol was to be recovered and used for beverage purposes; and that the latter purpose was carried out under circumstances which, it is alleged, made the defendants responsible for the diversion of

---

[1] Revenue Act of 1926, c. 27, 44 Stat. 9, 104:

"Title IX.—Tax On Distilled Spirits And Cereal Beverages.

Tax On Distilled Spirits.

"Sec. 900. Subdivision (a) of section 600 of the Revenue Act of 1918, as amended, is amended to read as follows:

"Sec. 600. (a) There shall be levied and collected on all distilled spirits now in bond or that have been or that may be hereafter produced in or imported into the United States, in lieu of the internal-revenue taxes now imposed thereon by law, an internal-revenue tax at the following rates, to be paid by the distiller or importer when withdrawn, and collected under the provisions of existing law:

" '(1) Until January 1, 1927, $2.20 on each proof gallon or wine gallon when below proof and a proportionate tax at a like rate on all fractional parts of such proof or wine gallon;

" '(2) On and after January 1, 1927, and until January 1, 1928, $1.65 on each proof gallon or wine gallon when below proof and a proportionate tax at a like rate on all fractional parts of such proof or wine gallon; and

" '(3) On and after January 1, 1928, $1.10 on each proof gallon or wine gallon when below proof and a proportionate tax at a like rate on all fractional parts of such proof or wine gallon.

" '(4) On and after the enactment of the Revenue Act of 1926, on all distilled spirits which are diverted to beverage purposes or for use in the manufacture or production of any article used or intended for use as a beverage there shall be levied and collected a tax of $6.40 on each proof gallon or wine gallon when below proof, and a proportionate tax at a like rate on all fractional parts of such proof or wine gallon, to be paid by the person responsible for such diversion. If a tax at the rate of $2.20, $1.65, or $1.10 per proof or wine gallon has been paid upon such distilled spirits a credit of the tax so paid shall be allowed in computing the tax imposed by this paragraph.' "

the distilled spirits, so withdrawn from bond, to beverage purposes.

The defendants demurred to the declaration on the ground that the alleged taxes, for the recovery of which the suit was brought, are in reality penalties to enforce the 18th Amendment to the Constitution of the United States, U.S.C.A., and laws enacted pursuant thereto, and that by ratification of the 21st Amendment of the Constitution of the United States the 18th Amendment and all laws passed pursuant thereto became inoperative and no recovery can be had thereunder. The learned District Judge overruled this demurrer and concluded that the power of Congress to enact the revenue statute referred to did not depend upon the constitutional authority conferred by the 18th Amendment, and therefore the statute did not fall with the adoption of the 21st Amendment repealing the 18th Amendment, 8 F.Supp. 179. The District Court, however, thereafter overruled demurrers to pleas interposing the statute of limitations and a prior conviction in bar of the action and sustained demurrers to replications to these pleas, and finally concluded that the suit was for penalties and not for taxes, 15 F.Supp. 784. The appeal is taken by the United States from final judgment dismissing the actions as to both defendants, and the question presented here is whether the claim of the United States, or any part thereof, is a civil claim at law for unpaid excise taxes or for criminal penalties.

The $6.40 levied by the Revenue Act of 1926 involved in this appeal had its origin in the War Revenue Act of 1917, and was there entitled "War Tax on Beverages".[2] This act provided for a tax of $1.10 per proof gallon on all distilled spirits in bond when withdrawn for non-beverage use and $2.10 per proof gallon when withdrawn for beverage purposes. These taxes were to be in addition to the tax of $1.10 per proof gallon levied under the Revenue Act of 1894[3] without distinction as to use, thereby making the total tax $2.20 per proof gallon if withdrawn for non-beverage use and $3.20 if withdrawn for beverage purposes.

The Revenue Act of 1918[4] combined in one act the taxes provided by the Revenue Act of 1894, and the War Revenue Act of 1917, thereby making the non-beverage rate $2.20 per proof gallon, and by doubling the combined exaction on the beverage rate, made it $6.40 per proof gallon. On July 1, 1919, the War Prohibition Act[5] became effective, making it, for the duration of the war and until the termination of demobilization, unlawful to sell distilled spirits for beverage purposes, and disallowing the withdrawal from bond for beverage purposes except for export. The National Prohibition Act was passed October 28, 1919, and became effective January 16, 1920, on which date the 18th Amendment became effective both of which prohibited the use of intoxicating liquor for beverage purposes.

In 1921 the Revenue Act of 1918 was amended[6] so as to provide, "* * * on all distilled spirits on which tax is paid at the nonbeverage rate of $2.20 per proof gallon and which are diverted to beverage purposes * * *, there shall be levied and collected an additional tax of $4.20 on each proof gallon, * * *, to be paid by the person responsible for such diversion."

The Willis-Campbell Act[7] continued in force, or re-enacted by express provisions, all laws relating to the taxation of intoxicating liquor not directly in conflict with the National Prohibition legislation.

In 1926, the Revenue Act of 1918 was still further amended by section 900 of the Revenue Act of 1926, 44 Stat. 104, by providing: "* * * on all distilled spirits which are diverted to beverage purposes * * * there shall be levied and collected a tax of $6.40 on each proof gallon * * * to be paid by the person responsible for such diversion. If a tax at the rate of $2.20, $1.65, or $1.10 per proof gallon or wine gallon has been paid upon such distilled spirits, a credit of the tax so paid shall be allowed in computing the tax imposed by this paragraph."

■■■ The history of the legislation discloses that the first increase in the rate on distilled spirits withdrawn for beverage

---

2 Act of October 3, 1917, c. 63; 40 Stat. 300, 308.

3 Act of August 27, 1894, c. 349, 28 Stat. 509.

4 Revenue Act of 1918, c. 18, 40 Stat. 1057.

5 Act of November 21, 1918, c. 212, 40 Stat. 1045, 1046, § 1.

6 Revenue Act of 1921, c. 136, 42 Stat. 227, 285.

7 Act of November 23, 1921, c. 134, sec. 5, 42 Stat. 222, 223.

purposes was made by the War Revenue measure of 1917, and that it was then clearly a revenue tax to help meet the expense of the war. The Revenue Act of 1918 increased the rate to $6.40 to become effective February 25, 1919. On that date National Prohibition had neither been passed nor become effective. This tax, therefore, was not imposed as a penalty to enforce the policy of National Prohibition. When the Revenue Act of 1918 became effective it was not a violation of the law to withdraw spirits for beverage purposes, therefore, the tax it levied cannot be classified as a punitive penalty. It necessarily follows that the Revenue Act of 1918, was an independent revenue statute and no section of it was, or could have been intended to enforce National Prohibition, or relate to it in any manner whatsoever. Its continuation by re-enactment, or amendment by subsequent revenue laws, did not change its name, its title, its motive, its purpose, its nature, or its character. Congress named it a tax at its birth and called, understood and meant it to be a tax, as a means of raising revenue, throughout its legislative life.

In construing the Revenue Act of 1921, the Supreme Court said: "* * * the Revenue Act of 1921, * * * enacted on the same day [as Willis Campbell Act], shows that Congress had no intention then of relieving liquor from taxation merely because illegally dealt · with; for it provided specifically that if distilled spirits, tax-paid for nonbeverage purposes, be diverted to beverage purposes, an additional tax of $4.20 per gallon must be paid, although under the law such diversion could not be made legally. * * *"; and that, "a law which imposes a tax on intoxicating · liquor, whether legally or illegally made, is not in conflict with another law which prohibits the making of any such liquor. * * * There is no direct conflict between any provision of the prohibitory legislation and the imposition of the tax here in question." United States v. One Ford Coupe Automobile, 272 U.S. 321, 47 S.Ct. 154, 156, 71 L.Ed. 279, 47 A.L.R. 1025.

And in the same case the Supreme Court further declared: "A tax on intoxicating liquor does not cease to be such because the sovereign has declared that none shall be manufactured, and because *the main purpose in retaining the tax is to make law breaking less profitable.* * * *

These additional amounts also are called taxes by Congress, and were understood by it to be such." (Italics supplied)

In a case construing another section of the Revenue Act of 1926, the Supreme Court said: If the tax was levied "to raise revenue its validity is beyond question notwithstanding the fact that the conduct of the business taxed was in violation of law. The United States has the power to levy excises upon occupations, and to classify them for this purpose; and need look only to the fact of the exercise of the occupation or calling taxed, regardless of whether such exercise is permitted or prohibited by the laws of the United States or by those of a state. The burden of the tax may be imposed alike on the just and the unjust. It would be strange if one carrying on a business the subject of an excise should be able to excuse himself from payment by the plea that in carrying on the business he was violating the law. The rule has always been otherwise. The tax imposed by Rev.St. § 3244, as amended, affords an opposite illustration. That act imposes an excise, varying in amount, upon different forms of the liquor traffic." United States v. Constantine, 296 U.S. 287, 56 S.Ct. 223, 226, 80 L.Ed. 233. And in the recent case of Sonzinsky v. United States, 300 U.S. 506, 57 S.Ct. 554, 556, 81 L.Ed. 772, the Supreme Court declared that: "it has long been established that an Act of Congress which on its face purports to be an exercise of the taxing power is not any the less so because the tax is burdensome or tends to restrict or suppress the thing taxed."

Thus, it is well settled that Congress is empowered to tax by one statute, that which it prohibits and makes criminal by another; that Congress may impose a tax, varying in amount upon different forms of the liquor traffic; that it intended to tax liquor illegally dealt with; that the additional amount of $4.20 for diversion for beverage purposes is called by Congress a tax and was understood by it to be such; and that if the tax was levied to raise revenue, or if on its face it purports to be an exercise of the taxing power, its validity is beyond question, notwithstanding the fact that the conduct of the business is in violation of law, or that the imposition is burdensome or tends to restrict or suppress the thing taxed.

The World War created a necessity for enormous revenue and following the

war that necessity was apparently prolonged. When Congress continued by re-enactment and amendment the $6.40 exaction after prohibition became effective, it had the right to assume, and no doubt believed, that the business of illegally dealing in alcohol beverages would yield large and unusual profits. Subsequent events proved that that assumption and belief were well founded. It is common knowledge that at times during the prohibition era, liquor sold at exorbitant and profiteering prices. Congress had the right then to require a tax commensurate with the profits. It knew that the business would be carried on secretly, and that the expense of collecting the tax would be enormously greater than collecting from a legitimate business. It will be assumed that Congress was taxing to pay the added expense caused by the nature of the business. As was said in the minority opinion in the Constantine case, supra: "Apart from either of these beliefs, Congress may have held the view that an excise should be so distributed as to work a minimum of hardship; that an illegal and furtive business, irrespective of the wrongdoing of its proprietor, is a breeder of crimes and a refuge of criminals; and that in any wisely ordered polity, in any sound system of taxation, men engaged in such a calling will be made to contribute more heavily to the necessities of the Treasury than men engaged in a calling that is beneficent and lawful. * * * By classifying in such a mode Congress is not punishing for a crime * * *. It is not punishing at all. It is laying an excise upon a business conducted in a particular way with notice to the taxpayer that if he embarks upon that business he will be subjected to a special burden. What he pays, if he chooses to go on, is a tax and not a penalty. Nigro v. United States, 276 U.S. 332, 353, 354, 48 S.Ct. 388, 72 L.Ed. 600. Cf. Life & Casualty Insurance Co. v. McCray, 291 U.S. 566, 574, 54 S.Ct. 482, 78 L.Ed. 987."

The right of Congress to tax distilled spirits is unquestioned and the amount of the tax is solely a matter for legislative action. Classification, based upon the use to which an article is to be put, may be used for a different rate of tax. The same article if used for one purpose may be taxed at one rate and if used for another purpose may be taxed at a different and higher rate. Magone v. Wiederer,

159 U.S. 555, 16 S.Ct. 122, 40 L.Ed. 258; Cadwalader v. Wanamaker, 149 U.S. 532, 13 S.Ct. 979, 37 L.Ed. 837; Universal Battery Co. v. United States, 281 U.S. 580, 50 S.Ct. 422, 74 L.Ed. 1051; Walker Mfg. Co. v. United States, 65 Ct.Cl. 394, certiorari denied, 278 U.S. 617, 49 S.Ct. 22, 73 L.Ed. 540.

Collateral purposes or motives of Congress in levying a tax of a kind within the reach of its lawful power are matters beyond the scope of judicial inquiry. It will be assumed that it intended what it said. Another purpose not appearing in the act cannot be read into it. Magnano Co. v. Hamilton, 292 U.S. 40, 54 S.Ct. 599, 78 L.Ed. 1109. The statute upon which the suit was brought is not described or treated as criminal, but is described and treated as a taxing statute. Congress called the imposition a tax, intended it to be a tax, and beyond that we cannot go. Sonzinsky v. United States, supra.

As was said by the Supreme Court in Sinking-Fund Cases, Union P. R. Co. v. United States, 99 U.S. 700, 718, 25 L.Ed. 496: "Every possible presumption is in favor of the validity of a statute, and this continues until the contrary is shown beyond a rational doubt. One branch of the government cannot encroach on the domain of another without danger. The safety of our institutions depends in no small degree on a strict observance of this salutary rule." By the same process of reasoning, when the Congress of the United States calls an exaction a tax and understands it to be a tax, meant for it to be a tax, and puts it in an act to raise revenue every possible presumption is in favor of what Congress called and understood and intended it to be and this presumption continues until the contrary is shown beyond a reasonable doubt. If we give effect to what Congress has said and done we must conclude that the exaction is a tax and not a criminal penalty.

But the defendants contend that the use of the word "tax" in imposing a financial burden does not prove conclusively that the burden imposed is a tax, and that when it appears from its very nature that the imposition prescribed is a penalty solely it must be treated in law as such. This is true, but the levy here does not appear from its very nature to be of that character. Its nature can be determined only by the legislative history of the act and

the purpose and operation as disclosed by the act itself. The administrative practice has little bearing upon the question of the nature of the exaction. United States v. Constantine, supra. The legislative history of the statute points to a revenue tax. As stated by the District Judge in his first opinion, "it is thus seen that we are not concerned in any way with a question of uncertain construction of the Revenue Act, and there is no doubt that Congress intended the $6.40 rate to be payable despite national prohibition. And it is equally clear that the rate was not only called a tax by Congress but was meant by it to be a tax." 8 F.Supp. page 182.

The basic tax is to be paid upon withdrawal and the declared purpose for which it is withdrawn determines whether it can be withdrawn free from tax. The statute here imposes an additional tax upon a diversion to beverage purposes, after having been withdrawn for pretended tax-free use. It is an additional tax for the perpetration·of a fraud, akin to the sanction of 50 per centum addition prescribed by 'section 293 (b) of the income tax law, 26 U.S.C.A. § 293(b), imposed when "any part of any deficiency is due to fraud with intent to evade tax".

In discussing the nature of such impositions, the Supreme Court declared in the case of Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 633, 82 L.Ed. 917: "Congress may impose both a criminal and a civil sanction in respect to the same act or omission; for the double jeopardy clause prohibits merely punishing twice, or attempting a second time to punish criminally, for the same offense. The question for decision is thus whether section 293 (b) imposes a criminal sanction. That question is one of statutory construction. Compare Murphy v. United States, 272 U.S. 630, 632, 47 S.Ct. 218, 71 L.Ed. 446. Remedial sanctions may be of varying types. One which is characteristically free of the punitive criminal element is revocation of a privilege voluntarily granted. Forfeiture of goods or their value and the payment of fixed· or variable sums of money are other sanctions which have been recognized as enforceable by civil proceedings since the original revenue law of 1789. Act of July 31, 1789, c. 5, § 36, 1 Stat. 29, 47. *In spite of their comparative severity* [italics supplied], such sanctions have been upheld against the contention that they are essentially criminal

and subject to the procedural rules governing criminal prosecutions. * * * The remedial character of sanctions imposing additions to a tax has been made clear by this Court in passing upon similar legislation. They are provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud. * * * That Congress provided a distinctly civil procedure for the collection of the additional 50 per centum indicates clearly that it intended a civil, not a criminal, sanction. Civil procedure is incompatible ·with the accepted rules and constitutional guaranties governing the trial of criminal prosecutions, and where civil procedure is prescribed for the enforcement· of remedial sanctions, those rules and guaranties do not apply. Thus the determination of the facts upon which liability is based may be by an administrative agency instead of a jury, or if the prescribed proceeding is in the form of a civil suit, a verdict may be directed against the defendant; there is no burden upon the Government to prove its case beyond a reasonable doubt, and it may appeal from an adverse decision; furthermore, the defendant has no constitutional right to be confronted with the witnesses against him, or to refuse to testify; and finally, in the civil enforcement of a remedial sanction there can be no double jeopardy."

Thus, it will be seen that the bare amount of the tax is not the test of a punitive purpose, and that when Congress provides a civil procedure for the collection of an additional tax, that fact indicates clearly that it intended a civil and not a criminal sanction.

The comparative amount of the tax was considered in determining the nature of the imposition in the, majority opinion in the case of United States v. Constantine, supra. But the majority opinion in that case turned mainly on the point that Congress was punishing a violation of a state law and that Congress did not have the power to do this, and the reasoning in both the majority and the minority opinions in that case, leads to the conclusion that the $6.40 rate here in question was a tax and not a criminal penalty. In that case the additional tax was forty or fifty times as great as the basic tax. No such comparison appears in this case. The basic tax here is $1.10, and the tax on

diversion is $6.40 with a credit for the amount of the basic tax if already paid. The additional tax, therefore, is $5.30, less than five times the basic tax, and when consideration is given to the fact that the amount of $6.40 for beverage purposes was first fixed by Congress when it was not unlawful to use alcohol for beverage purposes, the comparative amount affords no evidence to reach a conclusion that its very nature was for a punitive purpose. Another significant fact to consider is that the taxing statute allows a credit on the $6.40 tax, if the amount of the basic tax has theretofore been paid. If the statute is a punishing statute, the punishment imposed would hardly be credited with the amount of a basic tax probably paid by another.

The Revenue Act of 1926 provided that the revenue rates prescribed therein be "collected under the provisions of existing law", which makes clear the character of the exaction here. Existing law provided that internal revenue taxes be collected by distraint[8] as well as by civil proceedings in court.[9] That Congress provided that the tax be collected by existing law, that is, by civil procedure, further indicates that it intended a civil and not a criminal sanction. Helvering v. Mitchell, supra.

The District Judge in his last opinion felt that in view of the difficulty of the question and the lack of express decision by the Supreme Court on the point, he should follow the decisions of the 10th Circuit (United States v. Jun, 48 F.2d 593) and the 6th Circuit (United States v. Glidden Co. et al., 78 F.2d 639) as authoritative. These cases are not in accord with the latest decisions of the Supreme Court and for the reasons herein stated we cannot agree with their reasoning or their result.

It, therefore, necessarily follows that a conviction of the defendants for a criminal act under a different statute would be no bar to a suit for the collection of the tax here involved.

■ The defendants further urge in support of the judgment for them, from which the appeal is taken, that under the allegations of the declaration, the United States is not entitled to recover the amount sued for from either of the defendants as the "person responsible" for the alleged diversion of distilled spirits to beverage purposes within the meaning of subsection 4 of section 900 of the Revenue Act of 1926. This contention cannot be sustained. The declaration alleges that the defendants in the course of their business withdrew from bond distilled spirits, denatured and manufactured the same into a product called "lacquer thinner" and then sold the "lacquer thinner" with the knowledge, design and intent that the alcohol to be recovered by the purchasers and the distilled spirits to be reclaimed, would be used for beverage purposes, and that all this was actually accomplished pursuant to such scheme of the defendants after the distilled spirits were originally withdrawn and manufactured into "lacquer thinner" under the false and fraudulent representation to the plaintiff that same would be used for lawful tax-exempt industrial alcohol purposes. In our opinion these allegations are sufficient to make the defendants responsible for the diversion of the distilled spirits so withdrawn from bond for beverage purposes, and thereby liable for the tax.

For the foregoing reasons the judgment of the District Court is reversed.

Reversed.

SOPER, Circuit Judge (dissenting).

The statute involved is section 900 of the Revenue Act of 1926, ch. 27, 44 Stat. 9, 104, 26 U.S.C.A. 245, whereby section 600 (a) of the Revenue Act of 1918 was amended so as to provide that on all distilled spirits diverted to beverage purposes, there should be levied a tax of $6.40 per gallon to be paid by the person responsible for the diversion. In computing the tax, credit was to be allowed for the basic tax, if previously paid, which varied from $2.20 to $1.10 per gallon, according to the date of withdrawal. The question is whether the excess charge over and above the basic tax was a true tax or a penalty. It is not disputed that the whole charge was designated by Congress as a tax, but it is asserted that the circumstances under which the statute was enacted, and the inherent nature of the charge, were such that it was of necessity a penalty.

---

[8] Title 26 U.S.C.A. §§ 1580, 1581, R S. § 3187, June 2, 1894, c. 234, § 1016, 43 Stat. 343; R.S. § 3188, 26 U.S.C.A. § 1582.

[9] Title 26 U.S.C.A. § 1432 (d), sec. 1109 (a), Revenue Act of 1926.

The question was left open in United States v. One Ford Coupe, 272 U.S. 321, 47 S.Ct. 154, 71 L.Ed. 279, 47 A.L.R. 1025. The court had under consideration the forfeiture of an automobile that had been seized in 1923 while being used for the purpose of concealing illicit distilled spirits. Even after the effective date of the Eighteenth Amendment, January 29, 1920, and the effective date of the National Prohibition Act, January 16, 1920, it was still legal to manufacture distilled spirits for other than beverage purposes; and the court held that the basic tax of $2.20 per gallon imposed by section 600 of the Revenue Act of 1918, as amended by the Revenue Act of 1921, was a true tax, payable whether the liquor was licitly or illicitly made. But the court found it unnecessary to determine whether or not the additional amount, by which the charge was increased to $6.40 per gallon upon distilled spirits withdrawn for beverage purposes, was a penalty. Referring to the provisions of the Revenue Acts and the Prohibition Act, the court said (page 328, 47 S.Ct. page 157): "The acts left in effect the basic tax of $2.20 per gallon, which was and is a true tax on the product, whether legally or illegally distilled, and added to it the additional amounts in case of illegal distillation or diversion to illegal uses. These additional amounts also are called taxes by Congress, and were understood by it to be such. Whether they were intrinsically penalties, and should be treated as such, we need not determine. The basic tax of $2.20 a gallon on liquor illegally produced is not imposed because of illegality, but despite of it."

The important circumstance attendant upon the passage of the Revenue Act of 1926 was the existence of the Eighteenth Amendment whereby the manufacture, sale or transportation of intoxicating liquors for beverage purposes in the United States was prohibited. In pursuance thereof, the National Prohibition Act had been passed. By reason of these enactments, the charge of $6.40 was imposed by the Revenue Act of 1926 upon conduct that could not be lawfully performed, but was criminal in its nature; and a reasonable inference would be that the purpose and effect of the additional exaction upon spirits diverted to beverage purposes was not to raise revenue, but to punish the commission of crime. The exaction was especially useful as a means of penalizing corporate organizations to which the manufacture of alcohol on a large scale was for the most part confined.

It is pointed out that the charge of $6.40 had its counterpart in a like charge imposed by section 600 (a) of the Revenue Act of 1918, ch. 18, 40 Stat. 1057, 1105, whereby a tax of $2.20 per gallon was imposed upon spirits withdrawn from bond for non-beverage purposes, and a tax of $6.40 was imposed upon spirits withdrawn for beverage purposes; and it is said that as the $6.40 tax on beverage alcohol in its origin was a true tax in no way linked with national prohibition, being passed before the War Prohibition and the National Prohibition Acts were enacted, the continuance of the charge in the Revenue Act of 1926 must be considered as the imposition of a tax rather than a penalty.

This argument, however, is not convincing, for in the meantime that which had been a lawful business, normally subject to federal excise tax, had become a crime. In United States v. Constantine, 296 U.S. 287, 56 S.Ct. 223, 80 L.Ed. 233, the court considered a so-called special excise tax of $1,000 imposed by section 701 of the Revenue Act of 1926, 26 U.S.C.A. § 1395, upon the business of a retail dealer in malt liquors carried on contrary to state law. Although such a taxing provision was first embodied in the Revenue Act of 1918, before war time or national prohibition was in effect, and was then carried forward in the Revenue Acts of 1921, 1924 and 1926, the court thought that the legislative history was of little assistance in determining whether the exaction was designed to raise revenue or to prohibit a traffic violative of State law. The conclusion was however reached that the provision, as found in the Act of 1926, was a penalty for violation of a State law which Congress had no power to ordain after the repeal of the Eighteenth Amendment. The holding was based upon the disproportionate size of the additional charge for carrying on an unlawful business, as compared with the excise tax upon a lawful business, and upon the further fact that the condition of the imposition was the commission of a crime. The court said (page 295, 56 S.Ct. page 227): "The condition of the imposition is the commission of a crime. This, together with the amount of the tax, is again significant of penal and prohibitory intent rather than the gathering of revenue. Where, in addi-

tion to the normal and ordinary tax fixed by law, an additional sum is to be collected by reason of conduct of the taxpayer violative of the law, and this additional sum is grossly disproportionate to the amount of the normal tax, the conclusion must be that the purpose is to impose a penalty as a deterrent and punishment of unlawful conduct."

Both of these conditions are found in the instant case. While the contrast between the tax on spirits withdrawn for non-beverage purposes and the charge upon spirits withdrawn for beverage purposes is not so glaring as that disclosed in the Constantine case, it is still sufficient to indicate a purpose to impose a deterrent penalty for crime rather than to lay a tax. The fact that Congress has called the exaction a tax does not alter its intrinsic nature. Lipke v. Lederer, 259 U.S. 557, 42 S.Ct. 549, 66 L.Ed. 1061; United States v. LaFranca, 282 U.S. 568, 51 S.Ct. 278, 75 L.Ed. 551.

The same conclusion was reached in the Sixth Circuit in United States v. Glidden Co., 78 F.2d 639, in which the prior decisions of the Supreme Court were discussed, and in the Tenth Circuit in United State v. Jun, 48 F.2d 593. It is said that these cases are not in accord with later decisions of the Supreme Court, but it does not appear that the principles hereinbefore enunciated have been repudiated. United States v. Constantine, 296 U.S. 287, 56 S.Ct. 223, 80 L.Ed. 233, has already been considered, and the only other later cases referred to are Sonzinsky v. United States, 300 U.S. 506, 57 S.Ct. 554, 81 L.Ed. 772, and Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917. In the first of these cases an excise upon dealers in firearms was held not to be a penalty for the purpose of suppressing the traffic, but a true tax within the taxing power of Congress. In the second case, an additional assessment of 50% in case of a deficiency in income tax return, due to fraud with intent to evade the tax, was held to be not primarily a punitive sanction but a remedial sanction imposed for the protection of the revenue and the reimbursement of governmental expense resulting from the fraud. The additional assessment was designed to encourage compliance with a statute that imposed a true tax. It is noteworthy that in both cases, unlike the situation in the pending suit, the tax considered was imposed upon le-gitimate business activity and did not necessarily involve an infraction of the law. Certain general principles enunciated in the previous cases were reaffirmed, that is, the possession by Congress of the power to impose a tax, even though it should be burdensome, or should tend to suppressing the thing taxed, and the power to impose a civil administrative sanction in aid of the collection of a tax, and on the other hand, the incompetency of the courts to inquire into the hidden motives of the legislative body; but there was no criticism of the decisions of the Supreme Court upon which the decisions in the Sixth and Tenth Circuits were based.

The District Judge was justified in following these decisions; and also in deciding, for the reasons given in his opinions, that in view of the pleadings the United States was not entitled to recover even the sum ·of $1.10· per gallon, the amount of the basic tax under the Revenue Act of 1926 on distilled spirits withdrawn during the period covered by the allegations in this case. The pleadings could have been amended so as to present the alternative theory of the right to recover at the rate of $1.10 per gallon, but the United States elected to present this theory in a separate suit now pending in the District Court.